**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

UNITED STATES OF AMERICA,      )
                                )
          v.                    )     CASE NO. 23-CR-62
                                )
AQUARIUS GUMBS              )
                                )
                                )
                                )
                                )

**<u>ORDER DISPOSING OF MOTION TO SUPPRESS (ECF No. 920)</u>**

Defendant Aquarius Gumbs has filed a motion to suppress at ECF No. 920. Notwithstanding the court's previous ruling at ECF No. 927, it has reviewed the motion and exhibits[1] attached thereto in conjunction with the record in this case and hereby **<u>DENIES</u>** the relief requested therein.[2]

**I.    <u>BACKGROUND</u>**

Mr. Gumbs was indicted by a Grand Jury on five criminal counts: (1) Conspiracy to Possess with the Intent to Distribute, and the Distribution of, Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); (2) Distribution and Possession with the Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); (3) Possession with the Intent to Distribute Marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D); (4) Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (5) Felon in Possession

---

[1] As detailed herein, certain exhibits appear to be missing.  The court will not grant leave to correct and/or amend.

[2] To be clear, the court maintains that Mr. Gumbs's filing is a substantive motion and that it was untimely submitted.  Thus, the court denies the motion for the independent reason that it was untimely filed without good cause shown.

of a Firearm, pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(8); as listed at Counts One, Five, Eight, Nine, and Ten of the Indictment. *See* ECF No. 21.

This is Mr. Gumbs's second motion to suppress, which advances similar (if not identical) arguments to those argued in the first.[3]  *Compare* ECF No. 741 with ECF No. 920; *see* ECF No. 999 (order denying ECF No. 741).  It also was filed long after the deadline for substantive motions expired.  ECF No. 250 (establishing December 1, 2023 deadline for substantive motions).  Though he stylized his papers as a motion in limine, its contents are clearly that of a motion to suppress.  The court previously denied the motion because it was untimely and hereby incorporates its reasons for the same.  *See* ECF Nos. 927, 934 (construing Defendant's filing as a motion to suppress and noting that managing deadlines is squarely within the court's discretion).  It reiterates that the motion is denied for the independent reason that it was filed almost a year after the substantive motion deadline expired in this case without good cause shown.[4]  However, the court will dispose of the motion on the merits as well.

Mr. Gumbs seeks to exclude evidence from Target Telephones 3 and 4.  ECF No. 920.  The phones were seized on March 28, 2023, at the time Mr. Gumbs was arrested.  He asserts five reasons the court ought to grant his motion:  (1) that a factual discrepancy as to whether or not Agent Dana Mofenson called his Target Telephone 3, (2) "Target telephone 3 was not the phone used in Halpin/Mofenson's probable cause demonstration of October 15, 2022 and June 28, 2022 further making the seizure and subsequent search unjustified," (3) [w]ithin the arrest report there was no reason mentioned by law

---

[3] The court exercised lenience and excused Defendant Gumbs's untimely supplements of his then-pending motion to suppress because the original motion was timely filed.
[4] The court reviewed the documents filed at ECF Nos. 684 and 686 and finds that they do not demonstrate good cause for submitting substantive motions past the deadline for the same.

enforcement justifying reason to be in the house searching or disconnecting Wi-Fi or security cameras, (4) "[e]ven though a protective sweep was not illustrated in the arrest warrant it is obsolete arrest[sic] is made outside and exigent circumstances did not take place," and (5) the good-faith exception does not apply.  ECF No. 920, pg. 2.

## II.    <u>LEGAL STANDARD</u>

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and prohibits the issuance of warrants without "probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

Warrant-based searches are presumptively reasonable.  *United States v. Lauria*, 70 F.4th 106, 120 (2d Cir. 2023).  "Nevertheless, where the presumption is overcome, even evidence obtained pursuant to a warrant can be suppressed." *Id.* "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, 438 U.S. 154, 155-156 (1978), *Lauria*, 70 F.4th 106, 124-125.  Thus, a defendant seeking "[t]o suppress evidence obtained pursuant to an affidavit containing erroneous information" must satisfy state of mind and materiality requirements by showing that "(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or

omissions were necessary to the issuing judge's probable cause finding." *Lauria*, 70 F.4th 106, 125 (alteration in original) (internal quotation marks and citation omitted).

Probable cause analysis involves a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit...there is a fair probability that contraband or evidence of a crime will be found." *United States v. Boles*, 914 F.3d 95, 102 (2d Cir. 2019).  "Probable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Kaley v. United States*, 571 U. S. 320, 338 (2014)).  Law enforcement is entitled "to draw reasonable inferences from [the] facts in light of their knowledge . . . and . . . experience" in finding probable cause.  *United States v. Ortiz*, 422 U.S. 891, 897 (1975), *United States v. Pabon*, 871 F.3d 164, 173 (2d Cir. 2017) (describing this analysis "from the perspective of an objectively reasonable police officer, recognizing that the officer is entitled to draw reasonable inferences on the basis of his prior experience").  Still, the discovery of fruits of a crime cannot retroactively support a finding of probable cause because courts "do not evaluate probable cause in hindsight." *Florida v. Harris*, 568 U.S. 237, 249 (2013).

Evidentiary hearings are not required unless "the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact [exist]." *United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005).  "[B]ald assertions…[w]ithout specification of the factual basis" in support of suppression will not do.  *United States v. Mathurin*, 148 F.3d 68, 69 (2d Cir. 1998) *United States v. Guadalupe*, 363 F. Supp. 2d 79, 81 (D. Conn. 2004) ("Suppression of evidence is not appropriate merely upon a defendant's conclusory, non-particularized allegations of unlawful official behavior."); *see also United States v. Viscioso*, 711 F. Supp. 740, 745

4

(S.D.N.Y. 1989) ("A hearing is not required if the defendant's statements are general, conclusory or based on conjecture."). Simply calling something a lie does not make it so.

Further, Fourth Amendment claims require standing; they invoke "personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas v. Illinois*, 439 U.S. 128, 134 (1978).


III.   **DISCUSSION**

   A. **"Non-Correlating" Probable Cause**

      i.   Meeting with W. Taylor

The defendant argues that Agent Halpin embellished certain allegations in his affidavit. More specifically, he disagrees that the intercepts and surveillance demonstrate that codefendant W. Taylor used him as a source to supply drugs.[5]

To briefly summarize the pertinent facts previously discussed by the court in its ruling on Defendant's first motion to suppress, shortly after a rather unsubtle conversation between W. Taylor and M. Apotrias, W. Taylor drove to Gumbs's home. ECF No. 999, pgs. 7-10. Taylor arrived, called Gumbs, and Gumbs confirmed he was home. Taylor then entered the home and proceeded into the basement. *Id.* Without any communication from Apotrias (and with Taylor still inside 21 Batter Terrace), Taylor called Apotrias and asked "Mark did you get tied up? You said an hour *I ran and did what you*

---

[5] The court incorporates by reference the facts articulated in its previous suppression ruling detailing an alleged transaction between codefendants W. Taylor, M. Apotrias, and Gumbs. ECF No. 999, II.C.i.

*asked.*" *Id.* (emphasis added).  W. Taylor remained in Gumbs's home until he received confirmation that M. Apotrias "still want[ed] all those 28 guys." *See United States v. Compton*, 704 F.2d 739, 742 (5th Cir. 1983) (providing the street value of 28 grams of cocaine).  M. Apotrias subsequently met with W. Taylor, was pulled over by police, and days later indicated that he got lucky that the police did not arrest him because they pulled him over while he was "dirty."  *Id.*  A reasonable interpretation of these events is that M. Apotrias requested drugs ("28 players"), W. Taylor went to Gumbs's home to retrieve the drugs, and W. Taylor took the drugs to M. Apotrias who dealt them to several unknown persons while under police surveillance after his meeting with W. Taylor.

Mr. Gumbs argues that these events cannot support probable cause because Target Telephone 3 was not used to call W. Taylor.  But that is not so.  The events establish that Mr. Gumbs utilizes cellular telephones to coordinate drug distribution. *United States v. Martinez*, No. 19-cr-0536 (PKC), 2021 U.S. Dist. LEXIS 89972, *6-7 (S.D.N.Y. May 11, 2021) (denying motion to suppress evidence from cellular phones where there was evidence Defendant generally used cell phones to coordinate drug sales); *see also United States v. Hammett*, 555 Fed. Appx. 108, 110 (2d Cir. 2018) (describing cell phones as "tools of the drug trade"); *United States v. Burkley*, 513 F.3d 1183, 1189 (10th Cir. 2008) (noting that multiple cell phone use is a "common practice in the drug trade"),  *United States v. Gaskin*, 364 F.3d 438, 457-58 (2d Cir. 2004) (seizure appropriate where narcotics trafficker's cell phones based on agent's experience),  *United States v. Benevento,* 836 F.2d 60, 70-71 (2d Cir. 1987) (recognizing narcotics agent's experience is relevant to probable cause determination for issuance of search warrant) (citing *United States v. Fama,* 758

6

F.2d 834, 838 (2d Cir. 1985).  Furthermore, there is evidence in this case that Mr. Gumbs uses references to "drinks" to mask discussions about drugs.  The affiant described how Mr. Gumbs spoke with an individual through Target Telephone 3 and discussed "drinks" with him.  ECF No. 999 (discussing co-Defendant's use of the phrase "tasty drinks" with Mr. Gumbs); *see United States v. Cancelmo*, 64 F.3d 804, 808 (2d Cir. 1995) (stating that "[u]se of such a narcotics code is certainly supportive of a probable cause finding," regardless of whether "narcotics code can provide the sole basis for the issuance of a warrant" (internal quotation marks and citation omitted)).

While Mr. Gumbs contests the sufficiency of his interactions with W. Taylor in establishing probable cause, he also raises additional peripheral arguments which he contends undermine the weight of those events.  For example, he argues that missing punctuation in the affidavit is evidence of manipulation.[6]  However, regardless of whether the statement in question was a request or command, and whether or not a question mark was missing, what matters is that the government alleges W. Taylor called him, asked (or demanded) to meet with him, and then proceeded to his home and remained there until he received confirmation M. Apotrias wanted "28 players."

Similarly, references to certain words and phrases said by W. Taylor are consistent with the affiant's allegation that Mr. Gumbs supplied W. Taylor.[7]  Much is made of the fact

---

[6] The court notes that Mr. Gumbs has a history in this case of alleging that government agents manipulated data, but when pressed by the court for proof, he cannot substantiate his allegations.  For example, at the discovery hearing on January 6, 2025, the court asked Mr. Gumbs what proof he had for his allegation that the government manipulated certain data.  He conceded on the record that he could not prove manipulation, but then *inserted that allegation into a brief filed the next day.*  It would appear to the court that Mr. Gumbs is more concerned with having a brief on the docket claiming that the government manipulated data than using proof to establish the same.

[7] For example, however unclear the communication to M. Apotrias might have been, the fact W. Taylor stated, "I have the thing [PH] you need, half of this time" does not mean that Gumbs did not previously provide the other half or some other quantity of drugs to W. Taylor.

that W. Taylor referenced "the other player."  A reasonable interpretation of the conversation and the events that transpired thereafter is that Mr. Gumbs is the "other player."

All of Mr. Gumbs's arguments on this point are speculative, conjectural, and cannot serve as the basis for ordering a hearing, especially given what transpired *after* W. Taylor's call with M. Apotrias.

The court reiterates its prior ruling that Mr. Gumbs's interactions with W. Taylor independently established probable cause to search Mr. Gumbs's home and, here, to seize his phones.  But even if it did not, there were four additional events (on top of several other details in affidavits submitted in this case) which together establish probable cause.[8]

### ii.  Meeting with R. Greatsinger

Mr. Gumbs also argues that the allegations concerning his meeting with R. Greatsinger do not establish probable cause.  It is unnecessary to discuss again what the court previously considered and ruled upon.  The court disagrees with Defendant's arguments and incorporates its discussion of the facts and related rulings from ECF No. 999, pgs. 10-12.

### B.  "False Probable Cause"

Mr. Gumbs argues the events described above do no amount to probable cause.  He is incorrect.  Defendant seems to misunderstand what is required to obtain a warrant. The Fourth Amendment does not require affiants to establish illegal activity with certainty. The tenor of Mr. Gumbs's arguments suggests that the government may obtain a warrant

---

[8] The four events are Mr. Gumbs's interactions with W. Taylor described herein, the allegations concerning his meeting with R. Greatsinger, the incident with a potential drug customer on October 28, 2022, and the allegations contained in the affidavit in support of searching Target Telephone 3.

only when electronic surveillance intercept a communication like "please get me 28 grams of cocaine" and an agreement to do the same.  That is not the law.  "Probable cause 'is not a high bar.'" *Wesby*, 583 U.S. 57 (internal quotation marks and citation omitted).

Defendant submitted a copy of his phone bill to establish that investigators never called Target Telephone 3 before seizing it.  Instead, he claims investigators embarked on an illegal search of his home to find the phone and "steal" it.  Exhibit G appears to show calls that *connected,* and it does not appear to show missed calls or calls that were never answered.  Each entry (or call) on Exhibit G has a listed duration of at least one minute.  The court reviewed the document against the affidavits in this case and observed that none of the agents mentioned that they answered Target Telephone 3 when they called it.  Therefore, Exhibit G has little, if any, value.  Investigators called the phone, heard the phone, and they were justified in retrieving the phone from Gumbs's nightstand with  a warrant in hand for the same.  *See United States v. Conley*, 342 F. Supp. 3d 247, 265 (D. Conn. 2018) (denying motion to suppress because calling cell phone did not constitute a "search" within the meaning of the Fourth Amendment).

The DEA reports are clear that the phone was found in "plain view."  Indeed,  Gumbs was found in the basement stairwell during his arrest.  While investigators secured Gumbs, they heard and saw the phone in the basement and seized it.  That the events transpired quickly and that Gumbs was brought outside does not undercut what is said in the DEA reports, specifically that Gumbs was found in the basement stairwell and the phone was in plain view.  *See  Kyllo v. United States*, 533 U.S. 27, 3 (2001); *Horton v. California, 496 U.S. 128, 133* (1990) ("If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy.").

Mr. Gumbs's argument that officers did not need to perform a protective sweep also lacks merit. After all, the previous search of Mr. Gumbs's residence uncovered a firearm. *See* ECF No. 999. Indeed, there are instances where officers may need to perform a protective sweep of an entire residence. *Payton v. New York*, 445 U.S. 573, 589 (1980); *see also* 3 Wayne R. Lafave, *Search And Seizure: A Treatise On The Fourth Amendment* § 6.4(c) (6th ed. 2021). In any event, the phone was within plain view and Mr. Gumbs does not offer anything persuasive in rebuttal. As with his first motion to suppress, it appears certain exhibits either were not submitted or are missing. For example, Exhibit I is purportedly a video of the basement layout. That video was not manually filed with the court. The same can be said for Exhibit J, which is not included within the 239-page PDF filed at ECF No. 920-1, or the 169-page PDF filed at ECF No. 955-1. Given that this is the second time Mr. Gumbs has failed to file exhibits, that he has failed to adhere to past deadlines in this case on numerous occasions, and that he has raised unfounded claims before the court, the court will not permit a motion to correct or to refile the exhibits.

Finally, Mr. Gumbs does not have standing to raise constitutional objections on behalf of Ms. Roan. The remainder of Mr. Gumbs's motion is denied consistent with the court's previous order, ECF No. 999.

### C. Excessive Force Claims

As a preliminary matter, Defendant does not have standing to argue constitutional violations against third parties. Thus, his allegations concerning any constitutional violation that might have occurred vis-à-vis Ms. Roan are denied.

The remainder of his allegations border on frivolous. Mr. Gumbs objects to quick entry into his home by law enforcement, without announcing their arrival, forcing him out into the cold. The DEA report tells a very different story. ECF No. 920-1, pgs. 234-236. That report indicates the officers provided Gumbs and Roan with clothing and were permitted to remain inside where it was warm. And even if they did not knock and announce their presence, this would not form the basis for suppression. *See, e.g., United States v. Acosta*, 502 F.3d 54, 61 (2d Cir. 2007) (holding, "In sum, a claim by a defendant that federal officers violated the knock-and-announce rule under either the Fourth Amendment or 18 U.S.C. § 3109 cannot form the basis for suppression of the evidence obtained in the ensuing search.").

### D. Overbreadth and Particularity

The warrant was neither overbroad nor lacking in particularity. The court finds *United States v. Harry*, No. 21-cr-0098 (JBA), 2022 WL 343963, 2022 U.S. Dist. LEXIS 20312 (D. Conn. Feb. 4, 2022) to be persuasive on this point. "[A] warrant must identify the specific offense for which the police have established probable cause[,] describe the place to be searched[, and] specify the items to be seized by their relation to designated crimes." *United States v. Galpin*, 720 F.3d 436, 445-46 (2013) (internal citations omitted); *see also United States v. Bianco*, 998 F.2d 1112, 1116 (2d Cir. 1993) (finding unconstitutional a warrant that did not mention a particular criminal statute or specify the type of criminal conduct). "A warrant may be broad, in that it authorizes the government to search an identified location or object for a wide range of potentially relevant material, without violating the particularity requirement." *United States v. Ulbricht*, 858 F.3d 71, 102-03 (2d Cir. 2017). The warrant incorporated an affidavit that included details of the

11

crime, the facts establishing probable cause, and types of evidence sought (*see* Attachment B-1).  Therefore, Mr. Gumbs's argument that the warrant is overbroad or lacks particularity is denied.

## IV.    **CONCLUSION**

Accordingly, it is thereupon **ORDERED AND ADJUDGED** as follows: The motion to suppress (stylized as a motion in limine) is denied.  Mr. Gumbs will not be permitted to refile or correct his motion.

**IT IS SO ORDERED** in Hartford, Connecticut, this 15th day of January, 2025.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE